# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-1079** (Ritchie County 17-F-61)

**William Michael Lamb,**
**Defendant Below, Petitioner**

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William Michael Lamb, by counsel George J. Cosenza, appeals the Circuit Court of Ritchie County's November 13, 2018, order sentencing him to an effective term of not less than eight nor more than forty years of incarceration following the entry of his conditional guilty plea to two counts of attempted murder and one count of malicious assault. The State of West Virginia, by counsel Scott E. Johnson, filed a response. On appeal, petitioner argues that the circuit court erred in denying his motion to suppress his statements to law enforcement officers.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2017, petitioner was approached for questioning by law enforcement officers who were investigating the shooting of petitioner's wife. Petitioner, who had not been placed under arrest, agreed to speak to officers and, during the interviews, eventually confessed to shooting his wife.[1] In October of 2017, a Ritchie County Grand Jury returned a five-count indictment against petitioner, charging him with two counts of attempted murder, one count of malicious assault, and two counts of use of a firearm during the commission of a felony.

Petitioner filed a motion to suppress any statements he made to law enforcement officers during his interviews on the basis that he invoked his right to counsel prior to his confession. The circuit court held a hearing on petitioner's motion to suppress in January of 2018. The State

---

[1]As more fully explained below, petitioner underwent two interviews separated by his participation in a polygraph examination.

1

presented the testimony of Corporal J.L. Brewer of the West Virginia State Police. Corporal Brewer testified that, around June of 2017, he approached petitioner in the waiting room of Ruby Memorial Hospital in Morgantown, West Virginia, during the course of investigating the shooting of petitioner's wife.[2] Corporal Brewer testified that he asked petitioner to accompany him to the police station and that petitioner agreed to go. Corporal Brewer testified that petitioner was not under arrest at that time. Upon arriving at the police station, Corporal Brewer read petitioner his *Miranda*[3] rights, which petitioner waived. Corporal Brewer testified that he conducted two interviews with petitioner. The first interview lasted approximately thirty minutes; thereafter, petitioner agreed to take a polygraph examination. Following the examination, petitioner asked to speak to Corporal Brewer.[4] This second interview lasted approximately twenty to thirty minutes. Corporal Brewer testified that, approximately nine to ten minutes into the first interview, petitioner stated "maybe I need to clam up until I get an attorney, I don't know." Following a brief pause, Corporal Brewer resumed questioning petitioner. According to Corporal Brewer, he did not believe that petitioner made a clear request for an attorney at that time and continued with questioning, as petitioner had waived his *Miranda* rights. Petitioner continued to answer Corporal Brewer's questions and did not refuse to answer any questions. During the second interview, petitioner confessed to shooting his wife.

Petitioner testified that he was never informed that he needed to make a specific statement to request an attorney, and that his statement that "maybe I need to clam up until I get an attorney" was his way of asking to speak to counsel. Petitioner agreed that he never requested counsel or invoked his right to remain silent following his brief comment. Ultimately, the circuit court found that petitioner's interrogation was not custodial so as to invoke petitioner's *Miranda* rights. Further, the circuit court found that petitioner's statement to Corporal Brewer that "maybe I need to clam up until I get an attorney, I don't know" did not constitute an unambiguous invocation of his right to counsel. Lastly, the circuit court found that there was no evidence indicating that petitioner's statements were not knowingly, voluntarily, and intelligently made. As such, the circuit court denied petitioner's motion to suppress his statement in an order entered on February 6, 2018.

In August of 2018, petitioner entered into a conditional plea agreement whereby he pled guilty to two counts of attempted murder and one count of malicious assault in exchange for the State's agreement to dismiss the remaining charges in the indictment. Petitioner reserved his right to appeal the denial of his motion to suppress. At a November of 2018 sentencing hearing, the circuit court sentenced petitioner to not less than three nor more than fifteen years of incarceration for each of his convictions for attempted murder and not less than two nor more than ten years for his conviction of malicious assault. The circuit court further ordered that the sentences were to run consecutively. It is from the November 13, 2018, sentencing order that petitioner appeals.

---

[2]The shooting occurred in Ritchie County, West Virginia.

[3]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]Law enforcement officers read petitioner his *Miranda* rights again prior to the polygraph examination, and petitioner waived those rights. Corporal Brewer also "reminded" petitioner of his *Miranda* rights during the second interview.

This Court has previously expressed that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996).

On appeal, petitioner argues that the circuit court erred in denying his motion to suppress. According to petitioner, his *Miranda* rights were violated when Corporal Brewer continued to question him after he expressed his desire to speak to an attorney. Petitioner relies on Syllabus Point 1 of *State v. Barrow*, 178 W. Va. 406, 359 S.E.2d 844 (1987), which holds, in relevant part, that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel." Petitioner contends that his statement was sufficient to invoke his right to counsel and that there are no "magic words" that need to be uttered in order to invoke this right. Petitioner argues that he made an affirmative assertion that he wanted to speak with an attorney and that, once that statement was made, Corporal Brewer was required to terminate the interview until petitioner spoke with an attorney. As such, petitioner concludes the circuit court erred in denying his motion to suppress any statements made after his request for counsel. We disagree.

This Court has previously explained that "the *Miranda* right to counsel has no applicability outside the context of custodial interrogation," that "until the defendant [is] taken into custody, any effort on his part to invoke his *Miranda* rights [is], legally speaking, an empty gesture" and that "the 'window of opportunity' for the assertion of *Miranda* rights comes into existence only when that right is available." *State v. Bradshaw*, 193 W. Va. 519, 530, 457 S.E.2d 456, 467 (1995). We also noted that the defendant in *Bradshaw*

> apparently argues the *Miranda* right to counsel attaches when *Miranda* warnings are given irrespective of whether he is in custody. Some support for this position may be gleaned from note 10 in *State v. Farley*, 192 W.Va. at 252, 452 S.E.2d at 57, and note 3 in *State v. Jones*, 193 W.Va. 378, 381, 456 S.E.2d 459, 462 (1995). These cases were intended to suggest under special circumstances that *Mirandizing* a defendant could create a situation where the failure to honor those rights could create such a state of confusion that a defendant might reasonably believe even his right to leave has been changed. *See United States v. Obasa*, 15 F.3d 603 (6th Cir. 1994) (*Miranda* warnings are necessary only prior to custodial interrogation; the issuance of *Miranda* warnings may transform a legal *Terry* stop into an illegal arrest). Absent these unique circumstances, which obviously are not present here, we believe the great weight of authority in this country is that a suspect may not invoke his *Miranda* right to counsel outside the context of custodial interrogation.

3

193 W. Va. at 530 n.9, 457 S.E.2d at 467 n.9 (citations omitted).

Here, petitioner's contention that his right to counsel under *Miranda* was violated is prefaced on his claim that his statements were given in the context of a custodial interrogation. However, the circuit court found that petitioner's "interrogation was not custodial so as to invoke [petitioner's] *Miranda* rights." Petitioner entirely fails to address this finding in his brief on appeal and simply concludes that his rights were violated because he stated that "maybe" he should remain quiet until he spoke to an attorney. Having reviewed the record, we find that there is no evidence that petitioner's interrogation was custodial.[5]

We previously addressed a similar situation in *State v. Finley*, 229 W. Va. 690, 735 S.E.2d 565 (2012). In *Finley*, the defendant agreed to speak to police officers regarding the suspicious death of his wife. *Id.* at 691, 735 S.E.2d at 566. The defendant voluntarily went to the police station, was read his *Miranda* rights, and was informed he was not under arrest. *Id.* The defendant then gave three statements, the first lasting an hour and forty-eight minutes, the second lasting two minutes, and the third lasting approximately eight to nine minutes. *Id.* at 692, 735 S.E.2d at 567. During the second statement, the defendant asked to speak to an attorney, but changed his mind and continued speaking to officers, eventually confessing to his wife's murder during the third statement. *Id.* at 692-93, 735 S.E.2d at 567-68. On appeal, the defendant argued that his confession was inadmissible given that he invoked his right to counsel and the questioning continued. *Id.* at 694, 735 S.E.2d at 569. This Court found that the evidence did not support a finding that the defendant could have reasonably believed that his freedom of action was curtailed such that his right to counsel under *Miranda* attached. *Id.* at 695, 735 S.E.2d at 570. We noted that the defendant was not under arrest, was told he was free to leave, and failed to present any evidence of coercion. *Id.*

We find the analysis in *Finley* applicable to the case at bar. In the instant matter, petitioner agreed to accompany Corporal Brewer to the police station and testified that he rode in the front passenger seat on the way there. Petitioner was not placed under arrest prior to the first statement,

---

[5]In Syllabus Point 1 of *State v. Middleton*, 220 W. Va. 89, 640 S.E.2d 152 (2006), *overruled on other grounds by State v. Eilola*, 226 W. Va. 698, 704 S.E.2d 698 (2010), we explained that "[a] trial court's determination of whether a custodial interrogation environment exists for purposes of giving *Miranda* warnings to a suspect is based upon whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." Factors that should be considered when making a determination of whether a custodial environment exists include:

> the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

*Middleton*, 220 W. Va. at 93, 640 S.E.2d at 156, syl. pt. 2, in part.

4

nor does there appear to be any evidence that he was handcuffed or prevented from leaving. His statements lasted approximately thirty minutes each with a two-hour break in between. Further, after petitioner made an ambiguous statement regarding speaking to an attorney, he continued to answer questions, eventually confessing to shooting his wife during the second interview. Simply put, there is no evidence to suggest that petitioner's freedom was restricted such that the interviews could be construed as a custodial interrogation. Petitioner was not under arrest, was free to leave at any time, and was under no compulsion to stay. As such, petitioner's argument that his statements should have been suppressed is without merit, as his right to counsel under *Miranda* would only attach in the context of custodial interrogations. *Bradshaw*, 193 W. Va. at 523, 457 S.E.2d at 456, syl. pt. 5. Given that we find that petitioner's interview did not constitute a custodial interrogation and that his rights under *Miranda* had not yet attached, we need not address whether petitioner's ambiguous statement was sufficient to invoke his right to counsel under *Miranda*.

For the foregoing reasons, the circuit court's November 13, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED:** April 6, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison